UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ZAHMEEN Z.W. MANUEL,          )
                              )
          Plaintiff,          )
                              )
     v.                       )          No. 4:21-cv-01428-JAR
                              )
OFFICER UNKNOWN HANNING, et al., )
                              )
          Defendants.         )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff Zahmeen Z.W. Manuel for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $49.13. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss the claim against Officer Hanning, as well as the official capacity claims against Lieutenant Rolland and Captain McClelland. The Court will also direct plaintiff to file an amended complaint as to Lieutenant Rolland and Captain McClelland in their individual capacities, regarding the excessive force claims against them.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his inmate account statement. (Docket No. 3). The account statement shows an average monthly deposit of $245.67. The Court will therefore assess an initial partial filing fee of $49.13, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the St. Louis County Justice Center (SLCJC) in Clayton, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming Officer Hanning, Lieutenant Rolland, and Captain McClelland as defendants. (Docket No. 1 at 1). Lieutenant Rolland and Captain McClelland are sued in both their official and individual capacities. (Docket No. 1 at 2-3). Plaintiff does not indicate the capacity in which Officer Hanning is sued. The complaint contains allegations that Officer Hanning, Lieutenant Rolland, and Captain McClelland used excessive force against him. At the time of the incident, plaintiff was a pretrial detainee. (Docket No. 1 at 2).

In his "Statement of Claim," plaintiff asserts that on October 9, 2021, he was "maced, assaulted [and] battered" while he was an inmate at the SLCJC. (Docket No. 1 at 4). The incident purportedly took place in the 7 Bravo Dayroom and in an elevator.

According to plaintiff, the incident began when Officer Hanning deployed pepper spray against him "without just cause." Plaintiff was then handcuffed with his hands behind his back, and placed in an elevator. While in the elevator, Lieutenant Rolland and Captain McClelland punched him and spit on him. Once off the elevator, Lieutenant Rolland and Captain McClelland "forcibly strapped [him] into a restraint chair." Plaintiff was left in the restraint chair for two-and-a-half to three hours, while he "was still doused in pepper spray the entire time." After being released from the restraint chair, he was placed into a cell and "not given a shower for at least 4 days."

Attached to the complaint are three exhibits: a letter to SLCJC officials regarding his sick call forms "being ignored or tossed," and referring to being "assaulted [and] battered" by Lieutenant Rolland and Captain McClelland; a Department of Justice Services Inmate Grievance Form; and a Formal Inmate Grievance Response Form. (Docket No. 1-3; Docket No. 1-4; and Docket No. 1-5). The Court has reviewed these exhibits and will treat them as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the

allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

Of particular note is a Grievance Form Attachment in which plaintiff presents additional facts regarding the October 9, 2021 incident. (Docket No. 1-4 at 2). In the attachment, plaintiff states that he got into a "war of words" with Officer Hanning after he became upset that Hanning would not let him back into his cell. Plaintiff states that the "exchange became more vitriolic" and he admits that he "began using cuss words." He called Officer Hanning a "b---h" and demanded that he be let back in his cell. Officer Hanning told him he would have to wait thirty minutes, at which point plaintiff approached her podium to challenge her. Plaintiff was told to step away from the podium, but he refused, at which point Officer Hanning deployed mace. (Docket No. 1-4 at 3). He then "grabbed for [the] mace can but incidentally found [the] officer's face instead [and] swung her to the ground and walked away from her."

After swinging Officer Hanning to the ground, plaintiff states that he lay on the floor and was placed in restraints. He was then "passed off to" Lieutenant Rolland and Captain McClelland who were supposed to take him to the eighth floor. While on the elevator, he alleges that he was punched and spat upon, and then placed in a restraint chair. When placed in the chair, he asserts that Captain McClelland told him that he did not care what happened to him, or how tight the restraints were, and that McClelland would break plaintiff's legs if McClelland wanted to.

As a result of this incident, plaintiff states that his right forearm was bruised and swollen, that he has suffered back and shoulder pain, and that he has experienced "mental and emotional terror." (Docket No. 1 at 4). He seeks $250,000 in damages. (Docket No. 1 at 8).

**Discussion**

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that excessive force was used against him while he was a pretrial detainee at the SLCJC. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss the claim against Officer Hanning, as well as the official capacity claims against Lieutenant Rolland and Captain McClelland. The Court will also direct plaintiff to file an amended complaint as to Lieutenant Rolland and Captain McClelland in their individual capacities, regarding the excessive force claims against them.

**A. Claim Against Officer Hanning**

Plaintiff has named Officer Hanning as a defendant, but has not indicated the capacity in which she is sued. A plaintiff can bring a 42 U.S.C. § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). However, if a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity claims. *Id. See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in

which she is suing the defendant, we interpret the complaint as including only official-capacity claims").

In this case, plaintiff has not indicated the capacity in which Officer Hanning is sued. As such, the Court will presume that Officer Hanning is being sued in an official capacity only. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535. *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, Officer Hanning is alleged to be a correctional officer at the SLCJC. As such, the official capacity claim against her is treated as being made against St. Louis County itself, her employer.

A local governing body such as St. Louis County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St. Louis County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

8

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not alleged sufficient facts to support the proposition that St. Louis County is liable for harming him due to an unconstitutional policy, custom, or failure to train.

First, as to policy, plaintiff's facts do not point to the existence of any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [St. Louis County's]

9

governing body" as being at issue in this case. Certainly, he does not claim that excessive force was used against him due to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Beyond a failure to specifically plead the existence of an unconstitutional policy, plaintiff has also not provided any facts supporting the proposition that such a policy exists. To the contrary, his complaint concerns the use of excessive force by correctional officers that allegedly occurred over the course of a single day. The Court cannot infer the existence of an unconstitutional policy or custom from a single occurrence. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

Second, with regard to custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" St. Louis County employees, much less that St. Louis County policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. Instead of a "persistent pattern," plaintiff's facts refer to an incident of excessive force that occurred against him alone. This single occurrence is not sufficient to demonstrate a pattern.

Third, and similarly, plaintiff has not demonstrated that St. Louis County was deliberately indifferent in failing to train or supervise its employees. That is, he has not shown that the county "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Plaintiff can assert that St. Louis County had notice by alleging a "pattern of similar constitutional violations by untrained employees." As noted above, however, his factual allegations are focused on the alleged use of force against him on October 9, 2021, rather than a more widespread pattern of unconstitutional behavior.

Finally, to the extent that plaintiff seeks to hold St. Louis County responsible for the actions of Officer Hanning, the Court notes that respondeat superior is not available in 42 U.S.C. § 1983

municipal liability actions. *See A.H.*, 891 F.3d at 728 ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory").

For all these reasons, plaintiff has failed to state a claim against St. Louis County. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, the official capacity claim against Officer Hanning must be dismissed.

As discussed above, the Court must presume that Officer Hanning was sued in an official capacity only. Even if Officer Hanning had been sued in an individual capacity, however, plaintiff's allegations are not sufficient to state a claim of excessive force.

Because plaintiff was a pretrial detainee at the time of this incident, his claim falls under the Fourteenth Amendment. *See Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010) ("The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the Fourteenth Amendment imposes analogous duties on jailers to care for detainees"). The Supreme Court has determined that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979).

To that end, the Due Process Clause protects pretrial detainees from the use of excessive force amounting to punishment. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). *See also Bell*, 441 U.S. at 535 (stating that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"); and *Smith v. Conway Cty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014) (stating that "the Due Process Clause prohibits any

11

punishment of a pretrial detainee, be that punishment cruel-and-unusual or not"). Analysis of excessive force claims under the Due Process Clause focuses on whether the defendant's purpose in using force was "to injure, punish, or discipline the detainee." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014). The Fourteenth Amendment gives state pretrial detainees "rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014). Indeed, pretrial detainees are afforded greater protection than convicted inmates in the sense that the Due Process Clause prohibits the detainee from being punished. *Id*.

In his "Statement of Claim," plaintiff alleges only that Officer Hanning "pepper sprayed [him] without just cause." This alone, without more, is insufficient to show that Officer Hanning acted punitively. In other words, the claim that Officer Hanning acted "without just cause" is an unsupported conclusion, not entitled to the presumption of truth. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

More importantly, the Court notes that plaintiff contradicts his own assertion that Officer Hanning acted "without just cause," and admits to not only initiating the confrontation, but using physical force against Officer Hanning. Specifically, in the attachment, plaintiff acknowledges that he was in a "war of words" with Officer Hanning after he became upset that Hanning would not let him back into his cell. He further states that the "exchange became more vitriolic," that he "began using cuss words," that he called Officer Hanning a "b---h" and demanded that he be let back in his cell, that he approached her podium to challenge her, and that he refused to step away from the podium when ordered. Plaintiff even asserts that Officer Hanning told him she would

12

"push her panic button," thereby indicating that Hanning perceived plaintiff to be acting in a threatening manner.

Ultimately, Officer Hanning had to deploy pepper spray because of plaintiff's refusal to follow directives to step away from her. Upon using the pepper spray, plaintiff admits to using violent physical force against Officer Hanning, which included swinging "her to the ground." Taken as a whole, these allegations do not demonstrate that Officer Hanning acted punitively in deploying pepper spray. To the contrary, they establish that plaintiff began a confrontation because he was impatient about getting back to his cell, used abusive and threatening language, refused to follow directives, attempted to intimidate a correctional officer, and eventually used physical force against the officer, swinging her to the ground.[1] Thus, even if plaintiff had sued Officer Hanning in an individual capacity, the claim would be subject to dismissal.

**B.   Official Capacity Claims Against Lieutenant Rolland and Captain McClelland**

Plaintiff has indicated that he is suing Lieutenant Rolland and Captain McClelland in their official capacities. As noted above, an official capacity claim against an individual is treated as a claim against that individual's employer. *See White*, 865 F.3d at 1075 (explaining that in an official capacity claim against an individual, the claim is actually "against the governmental entity itself"). Because Lieutenant Rolland and Captain McClelland are both alleged to be employed by the SLCJC, the official capacity claims against them are treated as claims against St. Louis County itself, their employer. However, as discussed at length above, plaintiff's allegations are insufficient to state a municipal liability claim against St. Louis County, as he has not demonstrated the

---

[1] The Court notes that on December 8, 2021, plaintiff was indicted on a charge of attempted first-degree assault for an incident in which he allegedly "wrapped his hands and arms around the victim's neck and applied pressure while saying 'I'm gonna break your neck, b---h. I'm going to kill you, b---h.'" *State of Missouri v. Manuel*, No. 21SL-CR05709 (21st Jud. Cir., St. Louis County). The incident took place on October 9, 2021 – the date on which plaintiff states he had his encounter with Officer Hanning – and the alleged victim is a correctional officer identified by the initials "PH."

existence of an unconstitutional policy, custom, or failure to train. *See Marsh*, 902 F.3d at 751 (recognizing 42 U.S.C. § 1983 municipal liability "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Therefore, the official capacity claims against Lieutenant Rolland and Captain McClelland must be dismissed.

### C.  Individual Capacity Claims Against Lieutenant Rolland and Captain McClelland

Plaintiff has also sued Lieutenant Rolland and Captain McClelland in their individual capacities, accusing them of excessive force. As previously discussed, plaintiff's claims are analyzed under the Due Process Clause of the Fourteenth Amendment, because plaintiff was a pretrial detainee at the time the incident occurred. Under the Due Process Clause, he is protected from the use of excessive force amounting to punishment. *See Kingsley*, 135 S.Ct. at 2473. Analysis of excessive force claims under the Due Process Clause focus on whether the defendant's purpose in using force was "to injure, punish, or discipline the detainee." *Edwards*, 750 F.3d at 732. The Fourteenth Amendment gives state pretrial detainees "rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Walton*, 752 F.3d at 1117. Indeed, pretrial detainees are afforded greater protection than convicted inmates in the sense that the Due Process Clause prohibits the detainee from being punished. *Id*.

In the "Statement of Claim," plaintiff alleges that Lieutenant Rolland and Captain McClelland punched him and spit on him while he was handcuffed in an elevator. Once he was taken off the elevator, Lieutenant Rolland and Captain McClelland strapped him into a restraint chair for two-and-a-half to three hours, while plaintiff "was still doused in pepper spray." According to additional allegations contained in an attachment to the complaint, plaintiff asserts

that Lieutenant Rolland and Captain McClelland used this force against plaintiff after plaintiff had been in an altercation with Officer Hanning, in which he apparently swung Hanning to the ground.

Based on the context plaintiff provides, the Court has determined that he has not sufficiently stated an excessive force claim. That is, plaintiff has admitted to being disruptive, using threatening language, physically intimidating a correctional officer, refusing to follow directives, and using violent physical force. All this occurred at around the same time that Lieutenant Rolland and Captain McClelland allegedly used excessive force against him. Thus, it is not clear that Lieutenant Rolland and Captain McClelland were acting punitively, rather than in an effort to restore discipline after plaintiff began acting disruptively, refused to follow orders, and used violence against a correctional officer.

Rather than dismissing at this time, the Court will give plaintiff an opportunity to file an amended complaint against Lieutenant Rolland and Captain McClelland in their individual capacities only. The amended complaint should focus on whether Lieutenant Rolland and Captain McClelland used force punitively, or whether they used force for a legitimate reason. Plaintiff shall have thirty days in which to file his amended complaint as to Lieutenant Rolland and Captain McClelland. Failure to comply will result in the dismissal of the claims against them without prejudice and without further notice.

### D. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 4). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of

counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $49.13 within thirty (30) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 4) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's claim against Officer Hanning is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

16

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against Lieutenant Rolland and Captain McClelland are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to plaintiff a copy of the Court's prisoner civil rights form.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint on the Court form as to Lieutenant Rolland and Captain McClelland in their individual capacities within **thirty (30) days** of the date of this order.

**IT IS FURTHER ORDERED** that if plaintiff fails to file an amended complaint on the Court form as to Lieutenant Rolland and Captain McClelland in their individual capacities within **thirty (30) days** of the date of this order, the claims against them will be dismissed without prejudice and without further notice.

**IT IS FURTHER ORDERED** that upon receipt of plaintiff's amended complaint as to Lieutenant Rolland and Captain McClelland, the Court will review the claims under 28 U.S.C. § 1915.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 17th day of February, 2022.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

17

18